UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                          Criminal No. 11-20033

      Plaintiff,                                     Honorable Nancy G. Edmunds

v.

KEITH EPSTEIN,

      Defendant.

_____/


**ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER
28 U.S.C. § 2255 [19]**

      Before the Court is Petitioner Keith Epstein's motion to vacate sentence under 28 U.S.C. § 2255. (Dkt. 19, "Petitioner's Motion.") The Court has jurisdiction over this motion pursuant to 28 U.S.C. §2255, based on Petitioner's conviction in this Court on October 17, 2011. (Dkt. 18, Judgment in a Criminal Case ("Judgment").) The Court has reviewed the pleadings and DENIES Petitioner's request for a hearing.[1] The Court DENIES Petitioner's motion WITH PREJUDICE.

**I.    Background Facts & Procedural History**

      On January 25, 2011, a grand jury indicted Petitioner on one count of bank fraud in violation of 18 U.S.C. § 1344. (Dkt. 7, Indictment.) On April 26, 2011 Petitioner pleaded guilty to that one count without a Rule 11 plea agreement. (*See* Dkt. 22-1, Plea Hr'g Tr. at 3.) On October 17, 2011, the Court sentenced Petitioner to 97 months in

---

[1] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(1).

prison pursuant to sentencing guidelines in 18 U.S.C. § 3553(a), and five years of supervised release. (Judgment at 2-3.) The Court further ordered Petitioner to pay restitution in the amount of $4,173,258.37. (*Id.* at 5.)

On September 4, 2012, Petitioner filed his motion to vacate sentence under 28 U.S.C. § 2255. (Pet'r's Mot.) Petitioner indicates that he pleaded "not guilty," but does not state that either a bench or jury trial was held. (Pet'r's Mot. at 1.) Petitioner indicates that he did not appeal his sentence. (*Id.*) Petitioner sets forth three arguments in support of his motion: (1) counsel advised him that he was pleading guilty pursuant to a Rule 11 plea agreement when no such agreement was entered, (2) counsel failed to appeal Petitioner's sentence as requested and did not inform Petitioner that the conviction was not appealed, and (3) counsel was ineffective for advising Petitioner to plead guilty when Petitioner felt that "[v]ictims of the alleged offense were individuals that [did] not fit the definition of financial institution" as required by 18 U.S.C. § 1344. (Pet'r's Mot. at 5.) The government submitted a response on January 11, 2013, addressing each of Petitioner's claims. (Dkt. 22, Govt's Resp. to Def.'s Mot. ("Resp.").) Petitioner's defense counsel, Mr. Richard O'Neill, submitted an affidavit addressing Petitioner's allegations of ineffectiveness on May 1, 2013. (Dkt. 25, O'Neill Aff.)

**A. Claim One: No Rule 11 Plea Agreement**

First, Petitioner argues that his attorney, Federal Defender Richard O'Neill, "told [Petitioner] he had negotiated a Rule 11 plea agreement on [Petitioner's] behalf" and that Mr. O'Neill "guaranteed" Petitioner that he "would not receive a sentence greater than 58 months." (Pet'r's Mot. at 6.) The government's response properly points out that the "lack of a Rule 11 plea agreement was discussed on the record and explicitly

2

indicated in open court numerous times at the change of plea hearing on April 26, 2011." (Resp. at 3; *see* Plea Hr'g Tr. at 3, 16, 17.) Petitioner relies on Mr. O'Neill's sentencing memorandum, which incorrectly states that Petitioner pleaded guilty "with a Rule 11 plea agreement." (Dkt. 19-1, Sentencing Memo., Sept. 4, 2012.) The government points out that Mr. O'Neill did not submit this memorandum until five months after Petitioner's guilty plea. (Resp. at 4.)

Petitioner argues that "at no time during the hearing was [Petitioner] advised that there was no Rule 11 plea agreement." (Dkt. 23, Petitioner's Reply ("Reply") at 1.) However, Petitioner was present at the hearing and presumably heard numerous references to the non-existence of a Rule 11 plea agreement. Petitioner blames this inconsistency on the fact that he did not understand what "a Rule 11" meant because he is not an attorney. (*See* Reply at 2.)

The Court explicitly asked Petitioner whether anyone had "made any promise or assurance to [him] of any kind in an effort to get [him] to plead guilty." (Plea Hr'g Tr. 12:23-12:25.) Petitioner asserts that he answered "no" because he "did not think the Court was talking about the plea agreement." (Pet'r's Mot. at 6; *see* Plea Hr'g Tr. at 12.) At the same time, Petitioner characterizes Mr. O'Neill's advice regarding sentencing as a "guarantee." (Pet'r's Mot. at 6.)

## B. Claim Two: No Appeal

Petitioner claims that he instructed Mr. O'Neill to file an appeal and that Mr. O'Neill not only failed to do so but also failed to notify Petitioner of this fact. (Pet'r's Mot. at 8.) Petitioner produces no evidence beyond conclusory allegations to show that he requested an appeal. Mr. O'Neill attests that he did not file an appeal because when he

3

asked Petitioner about filing an appeal in the United States Marshal lockup after sentencing, Petitioner "said 'why bother it won't do any good – don't bother to appeal.'" (O'Neill Aff. ¶ 3.) Mr. O'Neill further states that he has not since received "any subsequent correspondence from [Petitioner] directing [Mr. O'Neill] to appeal." (O'Neill Aff. ¶ 4.) Plaintiff confirms that he did not make any subsequent attempt to contact Mr. O'Neill regarding an appeal. (Pet'r's Mot. at 9.)

### C. Claim Three: No Bank Fraud

Finally, Petitioner argues that his "plea was not knowingly and voluntarily entered" because the victims of Petitioner's fraud "were all private individuals" and not banks or financial institutions pursuant to 18 U.S.C. § 1344. (Pet'r's Mot. at 9.) In support of his claim, Petitioner requests the Court to consider the fact that the Probation Department identified Petitioner's victims as individuals as opposed to financial institutions. (*Id.* at 10.) Prior to Petitioner's guilty plea, Mr. O'Neill informed Petitioner that the distinction was not relevant because 18 U.S.C. § 1344 also applies when the money in question is in custody of a bank or financial institution, even where the bank is not the victim of the defendant's fraud. (*Id.* at 9.) *See* 18 U.S.C. § 1344(2).

## II.   Standard of Review

The crux of Petitioner's claims is the alleged ineffective assistance of Mr. O'Neill. The Sixth Amendment right to counsel extends to criminal defendants during the plea bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (internal citation omitted). The Court applies the *Strickland* analysis for ineffective assistance of counsel to Petitioner's three claims. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (holding that the failure to file an appeal be analyzed under *Strickland*). *Strickland*

requires the petitioner to show: (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

There is a strong presumption in favor of counsel's effectiveness. *See Kimmelmann v. Morrison*, 477 U.S. 365, 381 (1986) (holding that counsel's performance be examined from counsel's perspective at the time of the alleged deficiency and in light of all the circumstances, a highly deferential standard) (internal citation omitted). The Supreme Court has advised lower courts to address ineffective assistance claims carefully, so as not to allow "intrusive post-trial inquiry" to threaten the adversarial process that the Sixth Amendment right to counsel was designed to serve. *Strickland*, 466 U.S. at 689-90.

## III.   Analysis

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. All three of Petitioner's claims rest on the alleged ineffectiveness of defense counsel Mr. O'Neill at the time Petitioner pleaded guilty.

The Court analyzes Petitioner's *habeas corpus* claims using the *Strickland* test for ineffective assistance of counsel. Under *Strickland*, the Petitioner must show that: (1) counsel was in some manner deficient in his representation, and (2) this deficiency

prejudiced the defense in some manner. *Strickland*, 466 U.S. at 688, 694. The Supreme Court has held that "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. The Court may dismiss an ineffectiveness claim on failure to show prejudice alone, if that course is clearest. *Id*.

Petitioner here requests an evidentiary hearing on the issues stated above, and either a reduction in sentence to 58 months as allegedly promised by defense counsel or the right to rescind his guilty plea and proceed to trial. (Pet'r's Mot. at 8, 10.)

### A. Petitioner fails to demonstrate prejudice resulting from the absence of a Rule 11 plea agreement

When a criminal defendant pleads guilty, *Strickland* requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A lower court may properly deny an evidentiary hearing on the issue where the petitioner's motion does not satisfy any portion of the *Strickland* test. *Hill*, 474 U.S. at 60. The Court respects the "fundamental interest in the finality of guilty pleas" and takes into account "the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea." *Hill* 474 U.S. at 58 (citing *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Petitioner first asserts first that the lack of a Rule 11 plea agreement shows that his plea was not knowingly and intelligently entered and should be withdrawn. (Pet'r's Mot. at 6.) Second, Petitioner alleges that he suffered prejudice due to the absence of a Rule 11 plea agreement because he believed this agreement guaranteed him a

6

sentence of no more than 58 months. (*Id.*) Petitioner states that had he known that no Rule 11 plea agreement existed, he would have "never entered a guilty plea and would have proceeded to trial by jury." (*Id.* at 8.)

### 1. Petitioner's guilty plea was knowingly and intelligently entered

Petitioner characterizes his guilty plea as unintelligent and unknowing as a result of his alleged belief that a Rule 11 plea agreement had been entered and thus subject to withdrawal. (Pet'r's Mot. at 6.) For a guilty plea to be valid, the defendant must enter into the plea knowingly and intelligently. *Brady v. United States*, 397 U.S. 742, 747 (1970) (internal citation omitted) (finding the defendant's plea voluntary and knowing even though it was at least partly motivated by the knowledge that co-defendant became available to testify and jury trial could impose death sentence). "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady*, 397 U.S. at 757. The Supreme Court identified the competence of counsel, the defendant's awareness of the nature of the charge against him or her, and demonstration of the defendant's mental competence at trial as relevant factors. *Id.* at 756.

In *United States v. Williams*, the Sixth Circuit rejected an unrepresented defendant's assertion that his plea was unknowing even though the defendant falsely believed he would be eligible for a reduction of his sentence below the guidelines and the defendant was not informed that the guidelines had recently changed. 194 F. App'x 318, 324 (6th Cir. 2006).

Although Petitioner may have subjectively believed he would receive a lighter sentence in exchange for his guilty plea, the Court advised Petitioner that the maximum sentence could vastly exceed the 58 months he allegedly expected. (Plea Hr'g Tr. 9:17-9:18.) The Sixth Circuit does not regard attempts to withdraw a guilty plea where the petitioner's sole purpose lies in obtaining a more favorable sentencing as convincing. *United States v. Quinlan*, 473 F.3d 273, 277-78 (6th Cir. 2007). The Court REJECTS Petitioner's assertion that his plea was not knowing and intelligent, and finds that Petitioner was not prejudiced by the absence of a Rule 11 plea agreement.

The record is replete with references to the fact that no Rule 11 plea agreement was entered into at the time Petitioner pleaded guilty. (*See* Plea Hr'g Trans.) The Court rejects Petitioner's argument that he did not understand the proceedings due to the absence of the word "agreement," especially considering the fact that Petitioner at no time indicated that he did not understand the plea hearing proceedings. (*See* Plea Hr'g Tr.) Petitioner testified that he attained a bachelor's degree, does not suffer from addiction or mental illness and was not under the influence of any drugs or alcohol at the time of the plea hearing. (Plea Hr'g Tr. 5:23-6:6.) In *United States v. Takor,* the Sixth Circuit rejected two criminal defendants' motion to withdraw their guilty pleas due to alleged coercion by defense counsel. Nos. 92-2238, 92-2254 and 92-2255, 1993 WL 326698, at *1 (6th Cir. Aug. 26, 1993). The court found the guilty pleas voluntary - in part because "both defendants spoke fluent English and were well-educated," although both were noncitizens who had been in the United States for a significant length of time. *Id.* During his plea colloquy, Petitioner admitted to a sophisticated criminal scheme that further evidenced his intellectual capacity.

8

The Sixth Circuit has previously upheld this Court's decision not to allow a criminal defendant to withdraw his guilty plea for failure to show that the plea was not knowingly and intelligently entered. *United States v. Quinlan*, 473 F.3d 273 (6th Cir. 2007). In *Quinlan*, the defendant pleaded guilty to making false statements to the Securities and Exchange Commission (SEC), as well as financial fraud substantially similar to Petitioner's conduct here. *Quinlan*, 473 F.3d at 275. The Court held, and the Sixth Circuit agreed, that the defendant's educational background and "background as a sophisticated and successful businessman," considered alongside his plea colloquy, suggested that he understood the consequences of his guilty plea. *Id.* at 278. The Court also considered the fact that the defendant "sought to withdraw his guilty plea simply because he wanted more favorable treatment at sentencing" and not "a sudden decision to assert his innocence." *Id.* at 277-78. Similarly, Petitioner nowhere denies that he engaged in the conduct admitted in the plea colloquy. Petitioner possesses a sufficient level of education and sophistication to comprehend the consequences of his guilty plea.

During the plea hearing, Petitioner actively demonstrated his attention to the proceedings and awareness that he could speak independently on two separate occasions. First, Petitioner stopped the proceedings to correct what he perceived as an error on the part of Mr. O'Neill when Mr. O'Neill referred to a prior conviction in Macomb County as a state conviction. (Plea Hr'g Tr. 10:21-10:22.) Later, Petitioner requested that the Court reword the question -- "did you make promises to your clients to convince them to transfer their money from their own accounts into your accounts?" (*Id.* 14:21-14:25.) Petitioner demonstrated capacity to interrupt both the Court and defense

9

counsel based on his own interpretation of the proceedings. Had Petitioner failed to understand references by the Court, the government and Mr. O'Neill to a Rule 11 during the proceedings, the Court believes he would have been capable of requesting clarification.

Petitioner advised the Court that he was satisfied with Mr. O'Neill's representation, and that Mr. O'Neill had discussed the matter of his guilty plea with him. (Plea Hr'g Tr. 6:19-6:25.) Before accepting Petitioner's plea, the Court informed him that the maximum penalty could be up to "30 years in prison and a million dollar fine." (*Id.* 9:17-9:18.) Petitioner testified that he was not induced to plea as a result of any "promise or assurance," including that of a "more lenient sentence," and that his decision to plead guilty was made "freely and voluntarily." (*Id.* 12:23-13:11.) Even though Petitioner may have subjectively believed he would receive a lower sentence in exchange for a guilty plea, "a defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to various courses of action." *Brady*, 397 U.S. at 757.

### 2. Petitioner does not demonstrate prejudice stemming from the absence of a Rule 11 plea agreement

Petitioner asserts that he suffered prejudice in that he would not have pleaded guilty without the alleged guarantee of a 58-month sentence. (Pet'r's Mot. at 8.) Petitioner could not have, as he claims, "have said 'wait a minute my attorney Mr. O'Neill told me I had a plea agreement and it states that in my SENTENCING MEMORANDUM" because at Petitioner's plea hearing on April 26, 2011, Mr. O'Neill's sentencing memorandum presumably did not exist and had certainly not been

submitted to the Court. (Reply at 2.) Petitioner further admitted all elements of the offense during his plea colloquy; following *Brady*, the Petitioner is not entitled to disavow his own sworn admissions that he engaged in the elements of the offense simply due to a change in external circumstances. *See Brady*, 397 U.S. at 757.

Petitioner fails to show that he would have requested a jury trial, even if the Court is willing to assume that Mr. O'Neill falsely advised him that a Rule 11 plea agreement guaranteed him a lesser sentence than he eventually received. Nothing in existence at the time Petitioner entered his guilty plea suggests the existence of a Rule 11 plea agreement. Petitioner cannot prove the prejudice that he alleges; that he would have pleaded not guilty and requested a jury trial. Because the record does not support Petitioner's argument, the Court REJECTS Petitioner's first argument to vacate sentence.

### B. Plaintiff fails to prove both that Mr. O'Neill was constitutionally deficient by not filing an appeal and that Petitioner suffered prejudice as a result

In the Sixth Circuit, courts examine counsel's failure to file an appeal under *Strickland*. *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003). Where counsel has consulted with the defendant, counsel behaves unreasonably by failing to comply with the defendant's instructions. *Regalado*, 334 F.3d at 525. Petitioner correctly cites *Wright v. United States* for the proposition that if "a habeas petitioner's claim is true that he made an express request to his defense counsel to appeal his sentence and that counsel ignored the request, the claim amounts to a *per se* violation of the Sixth Amendment." 320 F. App'x 421, 426 (6th Cir. 2009). The petitioner may also base an ineffectiveness claim on counsel's failure to discuss the appeal process with petitioner. When counsel fails to consult petitioner on the decision to appeal, the

11

deficient performance deprives the petitioner "of the appellate proceeding altogether" and is presumptively prejudicial. *Flores-Ortega*, 528 U.S. at 483.

Here, while Petitioner is correct that "the records do not show that Movant cannot establish facts warranting relief under § 2255," the record also does not establish the opposite. (Dkt. 19-3, Pet'r's Memo. in Support at 4.) "Whether conviction follows trial or guilty plea" is also relevant to determining "counsel's constitutionally-imposed duty to consult with defendant about appeal" because a guilty plea "may indicate that defendant seeks end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 471.

### 1. Petitioner does not prove that he requested counsel to appeal

When counsel fails to comply with a criminal defendant's express request to appeal, courts presume prejudice under *Strickland*. In *Munoz v. United States*, the court faced a similar dispute about whether petitioner requested his attorney to file an appeal. Nos. 08-246, 06-19602, 2008 WL 2339456, at *2 (W.D. Mich. Jun. 4, 2008) (Quist, J.). The *Munoz* petitioner relied solely on assertions "in the body of his § 2255 motion itself" to support his argument that he requested an appeal, and did not provide any other facts, such as an affidavit or detailed description of when and where the alleged conversation took place. *Munoz*, 2008 WL 2339456 at *2. The *Munoz* petitioner's attorney submitted a thorough affidavit, indicating that when he met with the petitioner in lockup, "[petitioner] stated that he did not see any reason to appeal." *Id.* at *2-*3.

Similarly here, Petitioner stated "why bother it wont [sic] do any good – don't bother to appeal." (O'Neill Aff. ¶ 3.) Both affidavits also indicate that the petitioners made no further effort to contact counsel regarding the appeal process. (O'Neill Aff. ¶ 4, *Munoz*, 2008 WL 2339456 at *3.) While Mr. O'Neill's affidavit did not contain testimony

that Petitioner could communicate with Mr. O'Neill without an interpreter and knew how to reach Mr. O'Neill by phone, Petitioner is a native English speaker and more sophisticated than the *Munoz* petitioner. (*See* O'Neill Aff.; *Munoz*, 2008 WL 2339456 at *3.)

Unlike in *Munoz*, Petitioner submitted an affidavit asserting that he instructed Mr. O'Neill to file an appeal, however, this affidavit does not contain sufficient detail. (*See* Dkt. 19-2, Affidavit of Keith Epstein in Support Motion Under Title 28 U.S.C. § 2255 ("Pet'r's Aff.") (errors in original).) In *Flores-Ortega*, the Supreme Court reaffirmed its past holding that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." 528 U.S. at 477 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)) (emphasis original).

Here, the Court finds that Petitioner does not establish that he requested Mr. O'Neill to appeal his conviction. Petitioner does not specifically deny that he exclaimed "why bother," and admits that he does not remember any specifics about what Mr. O'Neill said regarding an appeal. (O'Neill Aff. ¶ 3; Pet'r's Mot. at 8.) Petitioner claims only that Mr. O'Neill allegedly "led [Petitioner] to believe he was going (to) investigate why [he] did not get the 58 months [he] was promised and if the matter could not be corrected [Mr. O'Neill] was going to file a Notice of Appeal." (Pet'r's Mot. at 8-9.) Petitioner's affidavit in support does not provide any additional details about the alleged conversation with Mr. O'Neill such as location, time, or what specifically was said. (*See* Pet'r's Aff.) Petitioner's affidavit fails to rise above conclusory and vague allegations and does not sufficiently prove that Petitioner requested Mr. O'Neill to appeal his conviction.

13

Although Mr. O'Neill's affidavit does not possess the same level of detail as counsel's affidavit in *Munoz*, it describes his conversation with Petitioner in federal lockup with significantly more concrete detail than Petitioner's affidavit. (*See* O'Neill Aff.) The fact that Petitioner submitted an affidavit, unlike the *Munoz* petitioner, does not materially impact the outcome. A district court does not err in crediting counsel's affidavit over that of a petitioner where petitioner fails to provide sufficient factual details. *See Odom v. United States*, No. 99-5506, 99-5768, 2000 WL 1175598, at *3 (6th Cir. Aug. 9, 2000) (crediting defense counsel's detailed affidavit over petitioner's affidavit, which contained only conclusory allegations). A district court may properly consider credibility of conflicting statements about whether the defendant requested an appeal. *See Richards v. United States*, 301 F. App'x 454, 457 (6th Cir. 2008) (holding that the district court did not err in finding that the defendant did not request an appeal based in part on credibility). Here, the Court finds that Petitioner did not request Mr. O'Neill to file an appeal. Following *Munoz* and *Odom*, the Court REJECTS Petitioner's assertion that he requested an appeal as unsupported by the evidence.

Where the petitioner fails to prove that he requested an appeal, the Court must determine whether counsel consulted with a petitioner about his right to appeal as required under *Flores-Ortega*. *Munoz*, 2008 WL 2339456 at *4.

### 2.  Counsel consulted with Petitioner about his right to appeal

Counsel generally has a responsibility to confer with a defendant regarding his right and desire to appeal. In *Flores-Ortega*, the Supreme Court rejected the Ninth Circuit's rule that "where the defendant has not clearly conveyed his wishes one way or the other . . . failing to file a notice of appeal without the defendant's consent is *per se*

deficient." 528 U.S. at 470. The Court found a *per se* rule "inconsistent with *Strickland*'s circumstance-specific reasonableness requirement." *Id*. Instead, counsel must consult with a criminal defendant both when (1) a rational defendant would seek to appeal (e.g., where nonfrivolous grounds for appeal exist) and (2) counsel knows that this particular defendant desires to appeal. *Flores-Ortega*, 528 U.S. at 480. Entry of a guilty plea, considered alongside all other circumstances, "reduces the scope of potentially appealable issues." *Id*. An "inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's . . . [decision]" whether to appeal after consultation. *Strickland*, 466 at 691.

Again, *Munoz* is instructive to the Court's analysis of Petitioner's claims. In *Munoz*, the court relied upon the level of detail provided in defense counsel's affidavit to establish that counsel consulted with petitioner about the possibility of an appeal. 2008 WL 2339456 at *4. Here, Mr. O'Neill's affidavit includes details about the conversation, including its time, location, for the Court to find that the consultation actually took place. (O'Neill Aff. ¶ 3.) Unlike Petitioner, Mr. O'Neill recalls statements made during the conversation that support his decision not to appeal Petitioner's conviction. (*Id*.)

### 3. Petitioner does not establish prejudice caused by the lack of an appeal

Where counsel's deficiency results in failure to appeal, "denial of the entire judicial proceeding . . . demands a presumption of prejudice because no presumption of reliability can be accorded to judicial proceedings that never took place." *Flores-Ortega*, 528 U.S. at 471. In order to rely on the presumption of prejudice, petitioner must "demonstrate that . . . he would have timely appealed," courts generally consider "evidence that there were nonfrivolous grounds for appeal or that the defendant

15

promptly expressed a desire to appeal." *Id.* at 471-72. Petitioner neither promptly expressed his desire to appeal nor presents nonfrivolous grounds for appeal.

Petitioner alleges that his grounds for appeal would have been deviation from the 58-month sentence allegedly promised by Mr. O'Neill, in addition to Mr. O'Neill's alleged ineffectiveness set out in Petitioner's claims. Importantly, Petitioner failed to file his motion based in part on failure to appeal. Courts consider a longer time lapse between sentencing and filing a § 2255 motion based on failure to appeal as evidence that the petitioner would not likely have filed an appeal. *See Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010) (denying relief where petitioner waited a year after sentencing to file § 2255 motion alleging ineffective assistance for failure to appeal).

Petitioner fails to bring forth nonfrivolous grounds for appeal to alternatively establish prejudice. Petitioner argues that he is entitled to appeal because he did not receive the 58-month sentence allegedly promised by Mr. O'Neill. At the sentencing hearing, Mr. O'Neill acknowledged in open court that a sentence of 58 months represented a downward departure from the sentencing guidelines based on the fact that under previous guidelines, Petitioner "would be looking at a sentence of 30 to 37 months." (Sentencing Hr'g Tr. 10:2-10:5.) The Court alone has the discretion to depart downwards from the sentencing guidelines. On appeal, a criminal defendant bears the burden of overcoming the presumption that a sentence within the guidelines is reasonable. *United States v. Butler*, 433 F. App'x 147 (6th Cir. 2011). *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) (denying defendant's appeal of 180-month sentence entered following a guilty plea where sentence fell at the higher end of sentencing guidelines but the court explicitly considered guidelines factors at sentencing

16

hearing). The "fact that [the defendant] desired a more lenient sentence, without more, is insufficient to justify [the appellate court] disturbing the reasoned judgment of the district court." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007).

Petitioner's sentence of 97 months falls at the top of, but does not exceed, the sentencing guidelines range of 78 to 97 months. (Dkt. 22-2, Sentencing Hr'g Tr. at 9:16-9:17.) The Court imposed a sentence at the highest end of the guidelines due to "horrific" nature of the offense, victim impact statements made at the hearing as well as "letters and other materials . . . received from other victims." (*Id.* 21:5-21:7.)

Petitioner does not bring forth relevant grounds for appeal to establish that, but for counsel's alleged deficiency, he would have timely filed an appeal. The Court informed Petitioner that he had a right to appeal his sentence, but would be required to do so within ten days. (Sentencing Hr'g Tr. 24:13-24:15.) The Sixth Circuit has held that a criminal defendant cannot establish prejudice where the petitioner's plea colloquy admits to the elements of the offense, and the "petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel." *Short v. United States*, 471 F.3d 686, 696-97 (6th Cir. 2006).

The *Short* court determined that petitioner waived his right to re-indictment when he pleaded guilty to possession of a quantity of illegal drugs (5,000 grams), amended upwards from the original quantity (500 grams) during his plea hearing and without re-indictment. 471 F.3d at 696. The *Short* petitioner's prejudice argument relied on the fact that he would have received a sentence between 87 and 108 months had he pleaded guilty to the original charge, instead of "the 120-month mandatory minimum required by

the amended indictment." *Short*, 471 F.3d at 697. Here, Petitioner similarly admitted to the elements of the offense in open court, and attempts to rely on the length of sentence to support his prejudice argument. Petitioner has not brought forth any additional, nonfrivolous, grounds upon which he would have based an appeal. The Court finds that under *Short*, Petitioner fails to prove prejudice.

### 4. The Court rejects Petitioner's request for an evidentiary hearing

A court need not hold an evidentiary hearing when the allegations "are contradicted by the record, are inherently incredible, or are conclusions rather than statements or fact." *Munoz*, 2008 WL 2339456, at *3 (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Petitioner presents only vague and conclusory statements in support of his various assertions. It is unlikely that an evidentiary hearing would bring forth any additional evidence regarding Petitioner's alleged request to appeal. Following *Arredondo*, the Court REJECTS Petitioner's request for an evidentiary hearing on the question -- whether he directed Mr. O'Neill to file an appeal.

The Court concludes that Petitioner has failed to show either that he requested an appeal or that counsel failed to consult with him regarding his right to appeal. The Court REJECTS Petitioner's second ground for relief under § 2255.

### C. Petitioner fails to prove that Mr. O'Neill incorrectly informed Petitioner as to the elements of bank fraud

Petitioner claims that Mr. O'Neill incorrectly stated the elements and application of the bank fraud statute, causing Petitioner to plead guilty to a charge of which he was innocent. (Pet'r's Mot. at 9.) Mr. O'Neill's advice that Petitioner's alleged conduct satisfied 18 U.S.C. § 1344, even though the victims of Petitioner's fraud were private individuals, is consistent with § 1344(2). The government correctly cites *United States v.*

18

*Warshak*, also cited by Petitioner, where the Sixth Circuit held that "a defendant may be convicted of bank fraud if he intends to defraud *someone* and implements a fraudulent scheme that either causes a federally insured financial institution to transfer funds or exposes that institution to some degree of risk." (Resp. at 9 (citing *United States v. Warshak*, 631 F.3d 266, 313 (6th Cir. 2010)), Pet'r's Memo. at 6.)

Petitioner argues that the money or property in question must be "owned by" a bank or financial institution for § 1344 to apply, selectively omitting the statutory language -- "or under the custody or control of." (Pet'r's Memo. at 5; 18 U.S.C. § 1344(2).) Petitioner argues that no transfer of funds involving a bank or financial institution took place when his victims wrote checks to him or business entities controlled by him, conduct that he admitted in his plea colloquy. (Reply at 4; *see* Plea Hr'g Trans. 13:17-13:18.) Petitioner also admitted to depositing the funds into his own bank account at a federally insured bank. (Plea Hr'g Trans. 13:25-14:2.) The Court rejects Petitioner's assertion that a check from one person to another does not constitute a bank transaction as unsupported by plain logic. Because Mr. O'Neill's advice accurately describes the statute under which Petitioner was sentenced, the Court REJECTS Petitioner's third argument to vacate sentence.

## IV.    Conclusion

Because the record does not support any of Petitioner's arguments in support of his motion to vacate sentence under 28 U.S.C. § 2255, the Court DENIES Petitioner's motion WITH PREJUDICE. The Court also DENIES Petitioner's request for an evidentiary hearing because Petitioner's claims are either "contradicted by the record,

2:11-cr-20033-NGE-RSW   Doc # 26   Filed 09/04/13   Pg 20 of 20   Pg ID 184

are inherently incredible, or are conclusions rather than statements or fact." *Arredondo*,

178 F.3d at 782.

<div style="margin-left: 3em;">

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

</div>

Dated:  September 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 4, 2013, by electronic and/or ordinary mail.

<div style="margin-left: 3em;">

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer

</div>